## FERSTMAN v FIDELITY & CASUALTY CO

Ohio Appeals, 8th Dist, Cuyahoga Co
Decided April 27, 1931

James T. Cassidy, Cleveland, for Ferstman.

Howell, Roberts & Duncan, Cleveland, for Fidelity & Casualty Co.

SHERICK, PJ, LEMERT & MONTGOMERY, JJ (5th Dist) sitting.

LEMERT, J.

We have carefully examined the record in this case, and have noted the assignments of error claimed therein, and with reference to the assignments of error, to-wit, 1, 2, and 5, we find that there is no prejudicial error therein, and that there is no merit to the claim made by plaintiff in error herein.

With reference to the third claim of error —to-wit that the court erred in permitting Samuel Meltzer to testify to a conversation had with Mr. Roberts, counsel for defendant, about 15 days prior to the trial, at which conversation neither plaintiff nor Betty Meltzer were present, we note from the record in the case, at pages 150, 151 and 152, the following:

"Q. When I talked with you about a week ago or ten days ago—I can't tell just when—but recently, isn't it the fact that that was the first time that I asked you if you had any knowledge on the subject of what became of those rings?

Mr. Cassidy: I object to that.
The Court: He may answer.
Mr. Cassidy: Note an exception.
A. Yes, sir, that is the first time.
Q. Up until I asked you that question recently, when I was talking to you about this case coming up for trial again,—up until I asked you that question, isn't it a fact that you never volunteered to tell me that you had seen one of these rings, in the fall following the alleged robbery?

Mr. Cassidy: I object, Your Honor, that is all cross-examination of his own witness.

The Court: Oh it isn't, it is directly in explanation. Otherwise the argument would be all one-sided Mr. Cassidy. He has a right to explain the witness' answer as to why certain things were not done.

Mr. Cassidy: Note an exception.
A. Never.
Q. That is, you have never volunteered to tell me?
A. No sir.
Q. Even though you went all through the other trial, and testified you never volunteered to tell me anything about it. Now, when I asked you recently if you had any notion as to whatever became of those rings, was that the first time that you ever told me about seeing this ring?

Mr. Cassidy: I object.
The Court: He may answer.
Mr. Cassidy: Exception.
A. Yes, sir.

Mr. Roberts: I think that is all."

We note from the record that Samuel Meltzer had testified at the former trial only as to the value of the rings involved in the robbery. In the second trial he also testified to the fact that he had seen one of the rings, that was taken in the robbery, in the possession of a deceased brother of Betty Meltzer.

An examination of the record just quoted fully convinces us that these questions and answers were improper and incompetent. It is very apparent to us that this line of questioning was clearly a cross-examination of defendant's own witness. Not only is it objectionable on that ground, but it sets forth a conversation between counsel for defendant and his only witness when no one else was present. We know of no theory or rule of evidence that would make these questions and answers proper for the consideration of a jury. We are, therefore, of the opinion that the foregoing answers and questions were improper, incompetent and highly prejudicial to the rights of the plaintiffs herein.

On the fourth ground of error complained of, to-wit, that the court erred in overruling the objection of plaintiff to the statements made by counsel for defendant in argument, we note on pages 202-3-4 the following:

"Mr. Roberts: Now I had had an opportunity only very casually to talk to Mr. Meltzer before the first trial. The young man in our office who sometimes prepares cases that I try, talked to him.—

Mr. Cassidy: I object to this statement, it has nothing to do with the evidence.

Mr. Roberts: But Meltzer had not in the first trial said anything at all about the matter of this ring being in the hands of the brother in the fall, and I hadn't known a thing about it, and I was dumbfounded when a week or two ago, expecting the case to come up, I had occasion to talk to him, and I just casually happened to say to him, "What do you suppose ever became of those rings?" I had never thought to ask him that question before; never supposed he had any idea about it, and just casually happened to say, "What do you suppose ever become of those rings?" and then, for the first time he said, "Well, I don't know, but I saw one of them, the dinner ring, in the possession of the brother in the fall following this." I was dumbfounded. I never knew that before; never thought of asking that on the first trial. Now, there is one other thing that is very important to him,

and that is this: if Meltzer was out for the purpose of trying to defeat his wife of a justice claim if his animosity was such that he wanted to defeat her claim, that would have been one of the first things that he would have told us before the trial of the other case. He didn't breathe it. He didn't volunteer it at all. He didn't volunteer it this last time. I just happened to ask the question, not supposing he knew anything about it at all. I just said out of curiosity, "Meltzer, what in the world do you suppose ever actually became of those rings?"

Mr. Cassidy: If the Court please, I object to Mr. Roberts' making a witness out of himself.

The Court: Oh that is the evidence Mr. Cassidy.

Mr. Cassidy: What Mr. Roberts said?

The Court: What was said by Mr. Meltzer.

Mr. Roberts: Yes.

The Court: To Mr. Roberts.

Mr. Cassidy: How in the world could a conversation between those two be competent in a lawsuit against this girl, Your Honor?

The Court: In explanation.

Mr. Roberts: That proof has already been offered.

The Court: Take your exception to the record, Mr. Cassidy, I guess I remember it.

Mr. Cassidy: All right. Note an exception."

Keeping and bearing in mind that Mr. Roberts was the attorney for defendant in the instant case, he was not sworn as a witness and yet he proceeded to and does state in argument to the jury—he states what he said to Meltzer, using his exact language and stated what Meltzer said to him, quoting Meltzer's exact language. There is no rule of procedure that permits counsel for either party to testify as a witness in his argument to the jury. This, in practical effect, was what was done in the instant case. The objection to these statements by counsel for plaintiff should have been sustained by the trial court and the overruling of them and permitting counsel for defendant to so testify was highly prejudicial to plaintiff in error.

Therefore it must follow that we do find that prejudicial error has intervened in the instant case for the reasons heretofore stated. Therefore this cause is hereby reversed and remanded to the trial court for further proceedings according to law. Exceptions may be noted.

SHERICK, PJ, and MONTGOMERY, J, concur.