OPINION.
{¶ 1} The plaintiff-appellant, Jane L. Wilson, appeals from the jury verdict and judgment entered in favor of the defendant-appellee, Youngok Ahn, on Wilson's claim for damages for personal injuries that she had allegedly suffered in an automobile collision. At oral argument, Wilson withdrew her first assignment of error. In her second and third assignments of error, she contends as follows: (1) the defense verdict was against the manifest weight of the evidence; and (2) she was prejudiced by inappropriate comments made by Ahn's counsel during closing argument. Because we agree with Wilson that defense counsel's remarks were inappropriate and prejudicial, we reverse the judgment and remand this case for a new trial.
 {¶ 2} On April 16, 1999, while stopped at a traffic light on Montgomery Road, Wilson's automobile was hit from the rear by Ahn's automobile. Although Wilson described the impact as causing "a pretty severe jolt" to her lower back, the photographs of her automobile taken directly after the accident showed little, if any, damage. She testified that she did not experience any pain at the time. Because the traffic was heavy, she and Ahn elected not to call the police and merely exchanged information.
 {¶ 3} Wilson testified that two weeks after the collision, however, she began to feel pain in her lower back and down her left leg. At the time of the collision, she had been continuously employed by RDI Marketing Services, Inc., for thirteen years as a coder. She regularly engaged in recreational activities such as "power walking," golfing, and gardening. She testified that her pain became progressively more severe. On May 14, 1999, the pain prompted her to consult her family physician, Irvin Silverstein, M.D. He examined her and prescribed Ibuprofen (800 milligrams).
 {¶ 4} When the pain persisted, Wilson went to Richard Cohen, P.S.C., a chiropractor. During her fourteen visits between July 13, 1999, and September 1, 1999, Dr. Cohen took x-rays and treated her with therapy, electric muscle stimuli, and ultrasound. When Wilson still did not obtain relief from her pain, Dr. Silverstein referred her to Dr. Bernard Bacevich, M.D., a board-certified orthopaedic surgeon and independent medical examiner. During his examination of Wilson on August 31, 1999, Dr. Bacevich found tenderness over the sciatic nerve and on the left side of her back, with pain radiating down her left leg. He concluded that there were clinical signs of a herniated disc and scheduled Wilson for an MRI. On September 2, 1999, the MRI confirmed the herniated disc.
 {¶ 5} Because Wilson was reluctant to have surgery, Dr. Bacevich prescribed exercises, physical therapy, anti-inflammatory medication, and epidural injections. Between September 10, 1999, and April 17, 2001, Wilson followed this course of conservative treatment but did not achieve the desired results. Although Dr. Bacevich did not see Wilson between April 7, 2000, and March 13, 2001, he ultimately referred her to Michael Kramer, M.D., a neurosurgeon, who scheduled Wilson for microscopic lumbar-disc surgery on March 29, 2001. When Wilson later informed Dr. Bacevich that her pain was subsiding, he scheduled her for another MRI on March 27, 2001. He testified that the second MRI disclosed that Wilson's herniated disc had resolved itself to a bulging disc that was not pressing on a nerve. He testified that this change in her condition was common with a herniated disc, and that it made it possible to treat Wilson without surgery.
 {¶ 6} At trial, Ahn admitted negligence but challenged whether the collision was the proximate cause of Wilson's injuries. Dr. Bacevich was the only expert to testify. His opinion, presented to the jury by way of video deposition, was that the rear-end collision, "within a reasonable degree of medical probability or certainty," caused Wilson's herniated disc. Ahn's counsel did not call a medical expert to rebut Dr. Bacevich's opinion. Rather, Ahn relied on two aspects of the evidence to form her entire defense: first, the minimal damage to both automobiles, which Ahn argued was evidence from which the jury could reasonably conclude (without the benefit of any expert testimony) that the collision was not severe enough to have herniated a disc; second, Wilson's admission during cross-examination that she had not informed Dr. Bacevich either about treatment for a pulled muscle in her lower back twenty years before the collision or about treatment for a muscle pull in her side five years before the collision. (Wilson testified that both injuries had completely resolved themselves in a matter of weeks and that she had been able within the same time to resume her usual activities.)
 {¶ 7} In her third assignment of error, which we consider first, Wilson contends that the trial court abused its discretion by allowing Ahn's counsel in closing argument to improperly comment on matters that were not supported or warranted by the evidence. In her closing argument, Ahn's counsel commented as follows:
 {¶ 8} "You saw, or you heard the evidence that Mrs. Wilson had some injuries. Yes, muscle pulls and strains, not disc injury, but they are injuries for supporting musculature of the spine. And these are injuries that were not mentioned to her treating physician. And as we all know, the history that you give a physician, that's what they go on. That's the thing that makes them say, oh, this injury must have been caused by that.
 {¶ 9} "A few weeks ago I had a situation unlike this, only by a degree. I woke up one morning and my knee was locked, swollen so painful."
 {¶ 10} At this point there was an objection by Wilson's counsel that was overruled, and Ahn's counsel continued:
 {¶ 11} "So painful, in fact, that I was walking with a cane for a few weeks. When I went to the doctor and had an x-ray taken and was treated he said, there is a lot of arthritis."
 {¶ 12} Wilson's counsel again objected. Again the objection was overruled, and counsel resumed:
 {¶ 13} "My doctor asked me, what I had done? What happened? What had been going on? He was asking my history. I'm helping him give me a diagnosis. I said, well, I play basketball. I just laid a tile floor. I have been cycling. That's what I have been doing the last three days. He tells me there is arthritis in my knee. I said, Doctor, what caused my knee to swell up like this? I can't pick out which one of those things. I can't pick out which one of those things caused this injury. I only know it is there and we need to treat it."
 {¶ 14} Counsel then drew a parallel between her situation (all of which had been presented as unsworn testimony and was not part of the record), and Wilson's case before the jury:
 {¶ 15} "This is a similar situation. There is a lot of damage already done and in the spine, asymptomatic, according to the testimony that we have heard. But there, nonetheless, we know that she was active through the time of the accident. Jogging, aerobics, softball, golf, and we also know that there was no onset of pain, according to Ms. Wilson's treating physician and her own testimony. There was no onset of pain for two weeks after the accident. We don't know what happened in those two weeks. What we do know is that every other possible cause of this injury, none of those causes can be collected on. Who are you going to sue if you, you know, you wrench your back digging a garden? But you do have somebody to sue when you get tapped in the rear end.
 {¶ 16} "This defendant is collectable. You can collect on this person, you can't collect on the rest of those possible causes of this injury. And remember, we don't have to prove that this accident wasn't the cause of the injury. They have to prove it was."
 {¶ 17} Closing argument to the jury is an opportunity for counsel to comment on the evidence and the reasonable inferences drawn from that evidence. The general rule provides that analogies, deductions, and inferences drawn from the evidence are proper, as counsel is afforded great latitude in closing argument. See Pang v. Minch (1990),53 Ohio St.3d 186, 194, 559 N.E.2d 1313; Durst v. VanGundy (1982),8 Ohio App.3d 72, 455 N.E.2d 1319.
 {¶ 18} The trial court, however, has a duty to prohibit counsel from creating an atmosphere of passion and prejudice or misleading the jury by improper remarks. See Clark v. Doe (1997), 119 Ohio App.3d 296,307, 695 N.E.2d 276, citing Jones v. Macedonia Northfield Banking Co.
(1937), 132 Ohio St. 341, 7 N.E.2d 544. Concededly, whether counsel has exceeded the permissible bounds of closing argument is generally a discretionary decision by the trial court, and the trial court's judgment on such matters is deferred to on appeal absent an abuse of that discretion. See Pang, supra, paragraph three of the syllabus. An abuse of discretion connotes more than an error of law or judgment; it implies that the trial court's attitude was unreasonable, arbitrary or unconscionable. See Blakemore v. Blakemore (1983), 5 Ohio St.3d 217,219, 450 N.E.2d 1140.
 {¶ 19} When counsel, however, refers to facts that are not in evidence during closing argument, the court has an affirmative duty, even when there is no objection, to intervene sua sponte and to instruct the jury to disregard counsel's improper remarks. See Clark v. Doe, supra, at 307, 695 N.E.2d 276. The trial court commits error if it allows counsel to use closing argument to offer unsworn testimony concerning matters that are not in evidence. See State ex rel. Brown v. Howard (1981),3 Ohio App.3d 189, 190, 444 N.E.2d 469. Without a timely curative instruction, the general admonition that what the lawyers say is not evidence in the trial court's general charge to the jury does not cure the prejudicial taint of counsel arguing outside the record. See Clark, supra, at 307, 695 N.E.2d 276. Equally important in this case, given defense counsel's insistence on informing the jury of her own medical experience, is an attorney's ethical duty not to serve as an unsworn witness for his or her client. See DR 7-106(C)(1) and DR 5-102.
 {¶ 20} Except when cause and effect is within the common knowledge of the jury, proximate cause of an injury is a medical finding that must be established by competent medical opinion. See Stinson v. England
(1994), 69 Ohio St.3d 451, 455, 633 N.E.2d 532. According to Stinson, if the plaintiff, having the burden of persuasion in a negligence action, establishes by competent evidence a prima facie case of proximate cause, the adverse party may respond by (1) cross-examination of the plaintiff's expert, (2) offering testimony of an expert that contradicts the plaintiff's expert, or (3) presenting expert testimony that sets forth an alternative explanation. See id. at 455-456, 633 N.E.2d 532.
 {¶ 21} The evidence of Ahn's negligence and the existence of Wilson's herniated disc were undisputed. The only medical evidence concerning causation was Dr. Bacevich's opinion that Wilson's herniated disc was caused by the rear-end collision. For whatever reason, Ahn did not offer a medical expert to rebut Dr. Bacevich's opinion. Nor did her trial counsel cross-examine him concerning what effect, if any, knowledge of Wilson's two injuries that had occurred in the remote past would have had on his opinion. Counsel also chose not to ask Dr. Bacevich whether the photographs showing minimal damage to the vehicles altered his opinion on causation upon the theory that the impact was insufficient to have caused a herniated disc.
 {¶ 22} Ahn's counsel waited, rather, until closing argument to use unsworn anecdotal evidence about her own knee and conversations with her own doctor to suggest some parallel between her own experience and Wilson's. Wilson, however, did not suffer from an arthritic knee, and she had not woken up one morning with a locked knee after three days of cycling, playing basketball, and laying tile, as apparently did Ahn's attorney. Telling the jury that Wilson's situation was "similar" to her own experience with her knee (which experience was not part of the record) was simply not true. Ahn's counsel compounded the prejudice when she then argued to the jury that "[t]here [was] a lot of damage already done and in the spine, asymptomatic, according to the testimony we have heard." That statement was a gross exaggeration and unsupported by the evidence. Dr. Bacevich testified that the July 12, 1999, x-rays "show[ed] some degenerative anterior osteophytes at L3-4" and that they were "chronic long-standing pre-existing changes" and "some degenerative change at C5-6 and C6-7."[1] There was no evidence, other than counsel's unsworn statement, that "a lot of damage was already done" or that Wilson's herniated disc or her symptoms of pain after the accident were in any way connected to the degenerative changes described by Dr. Bacevich.
 {¶ 23} In her brief, Ahn argues that "[w]hile, perhaps, inartfully presented, counsel was making the point that it is important to give an accurate medical history in order to allow a physician to arrive at an appropriate diagnosis and opinion as to causation." While this is generally true, the missing medical history must be shown to have had some potential for discrediting the expert's opinion. The inappropriate aspect of counsel's argument was its resort to matters not of record — counsel's own experience with a locked arthritic knee — and her urging that the jury should draw a comparison in an attempt to demonstrate some basis for rejecting Dr. Bacevich's opinion. Essentially, Ahn's counsel was inviting the jury to disregard the evidence of record and to speculate as to alternative causes of Wilson's injury. By overruling Wilson's objections, the trial court allowed unsworn testimony on the issue of causation that was not then subject to cross-examination, and left the jury with the false impression that defense counsel's experiences bore some relevance to the case being tried. In our view, the error was so prejudicial that it tainted the jury's verdict. Wilson's third assignment of error is sustained.
 {¶ 24} Although we need not address Wilson's second assignment of error, that the judgment was against the manifest weight of the evidence, certain of Ahn's Arguments prompt a response, if only in dicta. Ahn argues correctly that a jury is not required to accept expert medical evidence simply because it is uncontroverted, unimpeached, or unchallenged, and that the jury, in weighing the evidence, is entitled to believe all, part, or none of the testimony of any witness, including an expert. See Ace Steel Baling, Inc. v. Porterfield (1969),19 Ohio St.2d 137, 249 N.E.2d 892. In this regard, she maintains that evidence of the slight impact between, and minimal damage to, both automobiles, Wilson's lack of symptoms for two weeks, the chronic preexisting changes in her spine, and her failure to relate her entire medical history to Dr. Bacevich, provided sufficient evidence to support a defense verdict. See, e.g., Seasons Coal Co. v. Cleveland (1984),10 Ohio St.3d 77, 80, 461 N.E.2d 1273.
 {¶ 25} In support of this argument, Ahn relies on Iler v. Wright,
8th Dist. No. 80555, 2002-Ohio-4279, and Sawyer v. Duncan (Dec. 14, 2000), 8th Dist. No. 78056. Both cases, however, involved claims for subjective injuries rather than, as here, an objective injury. Iler is also distinguishable because, on cross-examination, the expert admitted that it was impossible to sort out the amount of pain attributable to the accident and to the preexisting condition. In Sawyer, the emergency room found no significant injuries to the plaintiff immediately after the accident of April 26, 1997, and the physician to whom the plaintiff's lawyers referred her testified not to objective findings, but only to subjective pain.
 {¶ 26} It is unnecessary, however, to decide in this appeal whether the verdict was against the manifest weight the evidence. Wilson is entitled to a new trial for the sole reason that the unsworn statements in the closing argument by Ahn's counsel were prejudicial and affected the verdict.
 {¶ 27} The judgment of the trial court is reversed, and this case is remanded for a new trial.
Judgment reversed and cause remanded.
Sundermann, P.J., and Hildebrandt, J., concur.
[1] Plaintiff's Exhibit 10, the report of the September 2, 1999, MRI, by agreement of counsel was not admitted in evidence.