[Cite as *State ex rel. Cordray v. U.S. Technology Corp.*, 2012-Ohio-855.]

COURT OF APPEALS
TUSCARAWAS COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | |
|---|---|
| STATE OF OHIO EX REL.<br>RICHARD CORDRAY,<br>OHIO ATTORNEY GENERAL | JUDGES:<br>Hon. William B. Hoffman, P.J.<br>Hon. Sheila G. Farmer, J.<br>Hon. John W. Wise, J. |
|     Plaintiff-Appellee | |
| -vs- | Case No. 11AP060025 |
| US TECHNOLOGY CORPORATION, ET AL. | |
|     Defendants-Appellants | O P I N I O N |

CHARACTER OF PROCEEDING:             Appeal from the Court of Common
Pleas, Case No. 2009CV070715

JUDGMENT:                         Reversed and Judgment Entered

DATE OF JUDGMENT:            February 29, 2012

APPEARANCES:

For Plaintiff-Appellee                         For Defendants-Appellants

THADDEUS H. DRISCOLL               LAURA L. MILLS
SARAH BLOOM ANDERSON            PAUL W. VINCENT
30 East Broad Street                          150 Smokerise Drive
25th Floor                                    Wadsworth, OH  44281
Columbus, OH  43215

*Farmer, J.*

{¶1}    On July 30, 2009, appellee, the state of Ohio, filed a five count complaint against appellants, US Technology Corporation, Vanguard Investments, Inc., and Raymond Williams, for violating environmental protections under former Ohio Adm.Code 3745-31-02(A), 3745-35-02(A), and R.C. 3704.05(C) and (G).  The alleged violations occurred between 2005 and 2009 at a manufacturing and storage facility located in Bolivar, Ohio.

{¶2}    On June 1, 2010, the trial court granted appellee summary judgment on three of its claims.

{¶3}    A bench trial on the remaining two claims and the appropriate civil penalty commenced on January 27, 2011.  By judgment entry filed May 20, 2011, the trial court found appellants liable on the two claims and assessed a total penalty of $70,000.00.

{¶4}    Appellants filed an appeal and this matter is now before this court for consideration.  Assignments of error are as follows:

I

{¶5}    "THE TRIAL COURT ERRED IN ITS DETERMINATION OF A CIVIL PENALTY OF $70,000.00 BASED ON THE FACTS SUBMITTED IN THIS MATTER."

II

{¶6}    "THE TRIAL COURT ERRED IN PIERCING THE CORPORATE VEIL TO HOLD RAYMOND WILLIAMS INDIVIDUALLY LIABLE FOR THE AWARD IN THIS MATTER."

I

{¶7} Appellant claims the trial court erred in assessing a $70,000.00 civil penalty based upon the evidence presented. We agree.

{¶8} In *State of Ohio ex rel. Cordray v. Morrow Sanitary Co.,* 5th Dist. No. 10 CA 10, 2011-Ohio-2690, ¶27, this court set forth the following regarding the determination of a civil penalty:

{¶9} "Pursuant to R.C. § 3734.13(C), a trial court must impose a civil penalty of up to $10,000 per day per violation. The trial court has the discretion to determine the exact amount of the penalty to ensure that it will be significant enough to affect the violator and deter future violations. *State ex rel. Montgomery v. Maginn* (2002), 147 Ohio App.3d 420, 426–427, 770 N.E.2d 1099. The assessment of an appropriate civil penalty lies within the sound discretion of the trial court and will not be reversed upon appeal absent evidence that the trial court abused its discretion in imposing the penalty. *State ex rel. Brown v. Dayton Malleable, Inc.* (1982), 1 Ohio St.3d 151, 157, 438 N.E.2d 120, and *State v. Tri–State Group, Inc.,* 7th Dist. No. 03 BE 61, 2004–Ohio–4441. In making this determination, the court should consider evidence relating to defendant's recalcitrance, defiance, or indifference to the law; the financial gain that accrued to defendant; the environmental harm that resulted; and the extraordinary costs incurred in enforcement of the law. See *State ex rel. LG Dev. Corp.* 187 Ohio App.3d 211, 219, 931 N.E.2d 642, 648. See also *Howard; State ex rel. Celebrezze v. Thermal–Tron, Inc.* (1992), 71 Ohio App.3d 11, 592 N.E.2d 912."

{¶10} The trial court adopted in total the thirty-five findings of fact and conclusions of law propounded by appellee pertaining to civil penalty and assessed a

$70,000.00 penalty as set forth in Conclusion of Law No. 43.  This amount is contrary to the recommendation by the Ohio EPA ($52,591.00) and State's Exhibit 23 (Air Civil Penalty Worksheet).  T. at 124-125.

{¶11}  Thomas Kalman, former manager of the enforcement section for the Ohio EPA, testified the civil penalty worksheet prepared on January 19, 2011 recommended a penalty of $52,591.00.  T. at 124; State's Exhibit 23.  This amount was based on 2,252 days of violations.  T. at 129.  Seven of those days were violations of the visible emission standards and eight of those days were violations for the failure to employ control measures.  T. at 139.  The remaining days were violations for failure to obtain the necessary permits and failure to file required reports.  T. at 140.  Pursuant to State's Exhibit 23, Section (B)(2), the failure to provide quarterly reports occurred from October 31, 2007 to July 31, 2009.  The Bolivar plant shut down in late 2007.  T. at 161.  The visible emission violations were the result of truck and forklift activity on the roadways causing "fugitive dust."  T at 45-46, 67-68, 72, 79.  The amount of emissions was minimal and not calculable.  T. at 136.  Conspicuously absent from the exhibit is any assignment of values for the categories of willfulness or negligence, degree of cooperation, and history of noncompliance.  The only statement in the record to these issues was made by Mr. Kalman who opined appellants were "[r]ecalcitrant to the extent that there were over 2,000 days of violation."  T. at 126.  Mr. Kalman also testified the exhibit set forth a reasonable penalty within Ohio EPA policy.  T. at 135.

{¶12}  The only item not included in State's Exhibit 23 is the cost of litigation to the state.  This matter was a one day trial that admittedly had a discovery component including depositions.  It is interesting to note that the matter was referred to the Ohio

Attorney General in 2008, but had been pending for enforcement since 2006. T. at 116-117. The complaint in this case was filed on July 30, 2009. Although it is only an observation by this writer, some of the permit issues could have been resolved in 2006 with swifter enforcement and could have been made prior to the facility being shut down at the end of 2007. T. at 161, 198-199. In fact, some of the days without permits and non-quarterly reporting are attributable to the time lapse from 2006-2009.

{¶13} We note the trial court did not assign a cost of litigation, but found, "***[t]he unusual nature of the case resulted in the State and its witnesses taking additional measures to enforce the law, including court appearances, reviewing documents, and preparing the case for trial. *Trial Trans.* 128:9-25, 129:1-2." Finding of Fact No. 40. There was no evidence as to cost presented at trial.

{¶14} The "Benefit Component" (economic benefit to violator for noncompliance) in the exhibit does not have a value and states it is "assumed to be negligible." No testimony was presented relative to the cost of further compliance.

{¶15} Upon review, we conclude the decision to assess a $70,000.00 penalty is not supported by the evidence. The only evidence is State's Exhibit 23 which lists a total amount of $52,291.00. Judgment is hereby entered for $52,591.00 as a civil penalty.

{¶16} Assignment of Error I is granted and judgment in the amount of $52,591.00 is entered pursuant to App.R. 12(C).

II

{¶17} Appellant claims the trial court erred in piercing the corporate veil and holding appellant Williams individually liable as the evidence was insufficient to support the decision. We agree.

{¶18} In *Dombroski v. WellPoint, Inc.,* 119 Ohio St.3d 506, 2008-Ohio-4827, ¶18 and syllabus, respectively, the Supreme Court of Ohio set forth the following test in determining whether to pierce the corporate veil:

{¶19} "In *Belvedere,* this court established a three-pronged test for courts to use when deciding whether to pierce the corporate veil, based on a test developed by the United States Court of Appeals for the Sixth Circuit in *Bucyrus–Erie Co. v. Gen. Prods. Corp.* (C.A.6, 1981), 643 F.2d 413, 418. *Belvedere,* 67 Ohio St.3d at 288–289, 617 N.E.2d 1075. This test focuses on the extent of the shareholder's control of the corporation and whether the shareholder misused the control so as to commit specific egregious acts that injured the plaintiff: 'The corporate form may be disregarded and individual shareholders held liable for wrongs committed by the corporation when (1) control over the corporation by those to be held liable was so complete that the corporation has no separate mind, will, or existence of its own, (2) control over the corporation by those to be held liable was exercised in such a manner as to commit fraud or an illegal act against the person seeking to disregard the corporate entity, and (3) injury or unjust loss resulted to the plaintiff from such control and wrong.' Id. at paragraph three of the syllabus. All three prongs of the test must be met for piercing to occur.

{¶20} "To fulfill the second prong of the *Belvedere* test for piercing the corporate veil, the plaintiff must demonstrate that the defendant shareholder exercised control over the corporation in such a manner as to commit fraud, an illegal act, or a similarly unlawful act. (*Belvedere Condominium Unit Owners' Assn. v. R.E. Roark Cos., Inc.* (1993), 67 Ohio St.3d 274, 617 N.E.2d 1075, modified.)"

{¶21} In its determination to pierce the corporate veil, the trial court adopted in total appellee's proposed findings of fact and conclusions of law on the issue. Findings of Fact Nos. 19 and 20 state the following:

{¶22} "19. Mr. Williams is the president of US Tech. *Trial Trans.* 105:20-21. He is also the sole director of US Tech. *Trial Trans.* 105:22-23. He personally appointed all four officers within US Tech, including himself. *Trial Trans.* 106:1-5. Mr. Williams is the only person who has the authority to sign for the taxes at US Tech. *Trial Trans.* 106:6-10. US Tech has one shareholder: the Raymond Williams Trust. *Trial Trans.* 106:16-19. At deposition in this case, Mr. Williams was unable to recall the last time US Tech had any shareholder meetings. *Williams Deposition* (filed Aug. 16, 2011) at pp. 8-9.

{¶23} "20. Vanguard has only one officer: Mr. Williams. *Trial Trans.* 103:17-20. Vanguard has no employees*. Trial Trans.* 104:10-12. Mr. Williams retains sole authority to sign for the taxes at Vanguard. *Trail Trans.* 104:24-25, 105:1. Mr. Williams also wields the sole authority to hire employees at Vanguard. *Trial Trans.* 105:7-10. Vanguard, like US Tech, has one shareholder: the Raymond Williams Trust. *Trial Trans.* 106:11-15. Mr. Williams may have signed personally on behalf of a loan to Vanguard. *Trial Trans.* 104:17-19. At deposition in this case, Mr. Williams was unable

to recall the last time Vanguard had any shareholder meetings. *Williams Dep.* at pp. 37-38."

{¶24} Appellant Vanguard is a company whose sole asset is the Bolivar plant and its sole purpose is to hold the title to the real estate. T. at 103. It has no employees nor assets save the real estate. T. at 105.

{¶25} As to the three prong test, there is no evidence that appellants attempted to commit a fraud or wrongdoing given the uncontested financial statement and the forbearance agreement on loans with its lender. It is clear neither appellant US Technology nor appellant Vanguard have any liquid assets and a civil penalty would be meaningless as well as appellee's ability to enforce the law and regulations of the state of Ohio.

{¶26} The dominion and control factor is the most troublesome. Appellant Vanguard is a real estate holding corporation solely controlled by appellant Williams and is the borrower on a loan signed by appellant Williams. T. at 103-104. Appellant US Technology is a corporation with one sole director, appellant Williams, and four officers appointed by the director. T. at 105-106. To find that such a scheme creates an automatic right to pierce the corporate veil would virtually undo all small businesses functioning as LLCs or Sub-Chapter S Corporations. The true issue is not dominion and control, but whether appellant Williams was the "alter ego" of appellant US Technology:

{¶27} "One factor recognized by the Sixth Circuit, that the shareholder's domination of the corporation was used to commit fraud or another wrong, was part of the *North* [*v. Higbee Co.,* 131 Ohio St. 507 (1936)] test. The Sixth Circuit also explicitly articulated two elements that we believe were implicit in *North:* the plaintiff must show

that the corporation is so dominated by the shareholder that it has no separate mind, will, or existence of its own, and that injury or unjust loss resulted from the shareholder's control of the corporation. See *North, supra,* 131 Ohio St. at 524-527, 6 O.O. at 173-175, 3 N.E.2d at 397-399. The first element is a concise statement of the alter ego doctrine; to succeed a plaintiff must show that the individual and the corporation are fundamentally indistinguishable. The second element is the requirement that the shareholder's control of the corporation proximately caused the plaintiff's injury or loss. Both are fairly obvious, but necessary, preconditions to recovery under the alter ego doctrine." *Belvedere Condominium Unit Owners' Association v. R.E. Roark Companies, Inc.* 67 Ohio St.3d 274, 288-289 (1993).

{¶28} Appellant US Technology was a corporation running two plants, one in Canton and the subject plant in Bolivar. The purpose of the plants was to run a sandblasting operation and manufacture concrete block as part of a recycling operation. T. at 160. The corporation was in existence for several years before unprofitability caused it to shut down in late 2007. T. at 161.

{¶29} Per *Belvedere,* there is no evidence the purpose of incorporating was to create a fraud or to violate the law. Although the corporation did not obtain the correct permits, it specifically hired an individual to obtain them, Dave Richards. T. at 164.

{¶30} Upon review, we find the evidence does not meet the *Dombroski/Belvedere* test. Accordingly, the trial court erred in finding appellant Williams individually liable for the civil penalty.

{¶31} Assignment of Error II is granted.

{¶32} The judgment of the Court of Common Pleas of Tuscarawas County, Ohio is hereby reversed and judgment is entered.


By Farmer, J.

Wise, J. concur and

Hoffman, P.J.  concurs in part and dissents in part.



s/ Sheila G. Farmer_____


s/ John W. Wise_____


_____

JUDGES

SGF/sg 125

*Hoffman, P.J., concurring in part and dissenting in part*

**(¶33)** I concur in the majority's analysis and disposition of Appellant's first assignment of error.

**(¶34)** I respectfully dissent from the majority's disposition of Appellant's second assignment of error.  I find there was sufficient competent and credible evidence to support the trial court's decision to pierce the corporate veil.


_____

HON. WILLIAM B. HOFFMAN

[Cite as *State ex rel. Cordray v. U.S. Technology Corp.*, 2012-Ohio-855.]

IN THE COURT OF APPEALS FOR TUSCARAWAS COUNTY, OHIO

FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| STATE OF OHIO EX REL.<br>RICHARD CORDRAY | : | |
| | : | |
| Plaintiff-Appellee | : | |
| | : | |
| -vs- | : | JUDGMENT ENTRY |
| | : | |
| US TECHNOLOGY CORPORATION,<br>ET AL. | : | |
| | : | |
| Defendants-Appellants | : | CASE NO. 11AP060025 |

For the reasons stated in our accompanying Memorandum-Opinion, the judgment of the Court of Common Pleas of Tuscarawas County, Ohio is reversed, and judgment is entered for appellee as against appellants US Technology, Inc. and Vanguard Investments, Inc. in the amount of $52,591.00. Costs to appellee.

s/ Sheila G. Farmer_____

s/ John W. Wise_____

_____

JUDGES